<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| JOHN W. TATE, | : | Civil No. 06-5024 (SDW) |
| Plaintiff, | : | |
| v. | : | **MEMORANDUM OPINION** |
| MORRIS COUNTY PROSECUTOR'S OFFICE, et al., | : | |
| Defendants. | : | |

It appearing that:

1. Plaintiff filed a civil rights complaint in the above action during October 2006. Plaintiff thereafter filed various letters and other documents in support of the complaint.

2. By Order and accompanying Opinion filed April 17, 2007, this Court construed the Complaint as attempting to assert three claims: interrogation in violation of <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), unconstitutional malicious prosecution, and denial of speedy trial rights. This Court dismissed the Complaint without granting Plaintiff leave to file an amended complaint.

3. Plaintiff appealed. On July 31, 2008, the United States Court of Appeals affirmed in part, vacated in part and remanded the matter. The Court of Appeals held that this Court properly identified these three claims and agreed that those claims failed as a matter of law and that amendment of those claims would be futile. However, on the basis of various letters Plaintiff submitted to this Court, the Court of Appeals remanded the matter to afford Plaintiff an opportunity to file a single concise amended complaint asserting claims he believes he may have

regarding a claim that prison personnel at Morris County Correctional facility denied Plaintiff access to certain legal materials in violation of the First Amendment, and a claim that prison personnel have been deliberately indifferent to his medical needs or have exposed him to a risk of physical injury in violation of the Fourteenth Amendment.

4. By Order entered August 13, 2008, this Court reopened the file and granted Plaintiff 30 days to file a single concise amended complaint asserting a claim that prison personnel at Morris County Correctional facility denied Plaintiff access to certain legal materials in violation of the First Amendment, and a claim that prison personnel have been deliberately indifferent to his medical needs or have exposed him to a risk of physical injury in violation of the Fourteenth Amendment.

5. On September 15, 2008, the Clerk received from Plaintiff and filed Plaintiff's amended complaint [docket entry #44]. The amended complaint is a 48-page document which raises a variety of claims, including the claims previously dismissed. Although a few paragraphs in the 199-paragraph document mention the law library and a risk of injury caused by denial of access to legal materials, the amended complaint does not comply with this Court's Order entered August 13, 2008, or Rule 8(a) of the Federal Rules of Civil Procedure.

6. On September 15, 2008, the Clerk received from Plaintiff and filed Plaintiff's first amended complaint [Docket entry #44]. By Order entered October 7, 2008 [Docket entry #46], this Court found that the first amended complaint, a 48-page document, raised the three claims previously dismissed on the merits by this Court. This Court determined that the first amended complaint did not comply with Rule 8 of the Federal Rules of Civil Procedure, the Order entered August 13, 2008, or the mandate of the Court of Appeals, in that it was not concise, and it was

not limited to the remanded claims.  This Court dismissed the first amended complaint without prejudice to the filing of a single concise amended complaint, which complies with Fed. R. Civ. P. 8(a) and is limited to a claim that prison personnel at Morris County Correctional facility denied Plaintiff access to certain legal materials in violation of the First Amendment, and a claim that prison personnel have been deliberately indifferent to his medical needs or have exposed him to a risk of physical injury in violation of the Fourteenth Amendment.

      7.  Plaintiff thereafter filed a Petition for Writ of Mandamus [Docket entry #47-2] dated October 15, 2008.  Plaintiff asked this Court to issue a writ of mandamus in regard to his pending state criminal prosecution because he "will be subject to 'trial by ambush' without due process protections."  Id. at p. 1-2.

      8.  By Order entered June 16, 2009 [Docket entry #52], this Court dismissed the petition for Writ of Mandamus with prejudice because federal courts have no mandamus jurisdiction to compel action or inaction by state officials.  See, e.g., Davis v. Lansing, 851 F. 2d 72, 74 (2d Cir. 1988).

      9.  In accordance this Court's Order entered October 7, 2008 [Docket entry #46] permitting Plaintiff to file a second amended complaint, Petitioner filed Docket Entry #49.

      10.  The Second Amended Complaint [Docket entry #49] contains 47 pages and 168 paragraphs which primarily repeat the claims that were dismissed with prejudice, i.e., Plaintiff complains that police interrogated him in violation of Miranda, defendants presented an indictment in violation of Plaintiff's constitutional rights, defendants' prosecution of Plaintiff is malicious, and defendants are delaying his criminal proceeding in violation of his constitutional rights.

11. In parts of the Second Amended Complaint, Plaintiff attempts to assert facts showing that defendants were deliberately indifferent to his health and safety and that they denied his right of access to courts, but Plaintiff's allegations do not comply with Rule 8, do state a claim for relief under 42 U.S.C. § 1983, and do not comply with the limited scope of the remand.

<u>Access to Courts</u>

12. Plaintiff asserts the following facts with respect to the access to courts claim. First, Plaintiff asserts that in 2005, while he was incarcerated at the Adult Diagnostic and Treatment Center, officials at that facility withheld his legal documents for 37 days and "refus[ed] to allow [Plaintiff] to take his legal documents with him by vehicle transport upon his release from A.D.T.C. on January 6, 2005. [Docket Entry #49 at p. 12 ¶ 48.] Second, Plaintiff asserts the following with respect to his incarceration at Morris County Correctional Facility:

> 57. On various dates from January 6, 2005 to May 20, 2008 the M.C.C.F. has frustrated, impeded, deprived, the defendant of his Constitutional Right of access to the Courts and has denied same without regard for the defendants rights with deliberate indifference, callous disregard, and inexcusable neglect.
>
> 58. The MCCF was informed in writing during this period on several occasions that he required time in the law library to complete Federal District Court filings, Post Conviction Relief Petitions, United States Court of Appeals briefs, State of New Jersey Superior Court filings in Morris County, and various Motions to the Court.
>
> 59. During the time of incarceration the defendant vehemently asserted his right of access to the Courts in written form and through verbal conversation with Lieutenants, Corporals, the Captains, and the Warden of [MCCF].
>
> 60. Plaintiff continually and assertively requested access to the Law Library to complete legal documents, and asked to be informed of Law Library closings . . . .
>
> 61. Defendant Delavecchia during a routine cell shakedown removed all of the plaintiff's blank white paper and informed the plaintiff that legal paper was only

4

> to be used in the Law Library and not to be used in the inmates cell effectively preventing any access to the Courts . . .
>
> 62. Plaintiff's ability to write, communicate, send mail, communicate with the Courts, have access to the Courts, file meaningful and necessary motions, pleadings, appeals and legal documents required by the Courts was purposefully deprived, neglected, impeded, stopped, ignored causing delays and failure of timely pleadings causing specific harm to the plaintiffs ongoing litigation and substantial stress, mental anguish, emotional and physical harm including but not limited to failing to allow the plaintiff to assert his rights before the Court constitution a deprivation of access to the Courts . . .
>
> 65. On various dates from on or about December 2006 to May 2008, the defendant filed grievances concerning the lack of access to the Courts and utilization of the Law Library following N.J.A.C. (New Jersey Administrative Code) guidelines.
>
> 66. MCCF denied access to the law library and therein access to the Courts by its actions and inactions concerning failure of timely legal mail delivery to attorneys, Prosecutors, Court Clerks, Judges, the Courts and the inmate, access to the Law Library, knowledge of closings, extended periods of closure in excess of 10-16 days without notice or arrangements being made to accommodate or inform the inmate . . .
>
> 67. MCCF failed to respond and or remedy the deprivations of access to the Courts by their negligence, abuse of process, failure to respond, actions and inactions, and through deliberate indifference to law.

[Docket Entry #49 at pp. 13-16]

    13. Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts. See <u>Lewis v. Casey</u>, 518 U.S. 343, 346 (1996); <u>Monroe v. Beard</u>, 536 F. 3d 198, 205 (3d Cir. 2008). "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury' - that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy' that may be awarded as recompense' for the lost claim other than in the present denial of access suit." <u>Monroe</u> at 205 (quoting <u>Christopher v. Harbury</u>, 536 U.S. 403, 415

(2002)).  To establish standing, "[t]he complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" Monroe at 205-206 (quoting Christopher at 416-17).  In Monroe, the United States Court of Appeals for the Third Circuit affirmed dismissal of inmates' access to the courts claim for failure to state a claim that was based on the confiscation of legal materials:

> In this case, the defendants confiscated all of the plaintiffs' . . . legal materials, including their legal briefs, transcripts, notes of testimony, exhibits, copies of reference books, treatises, journals, and personal handwritten notes.  In their initial pleadings, the plaintiffs' claim rested solely on the ground that the defendants confiscated their legal materials, contraband and non-contraband alike.  That claim, on its face, was insufficient to state a claim under Harbury.  So too were their subsequent amendments, which alleged that they lost the opportunity to pursue attacks of their convictions and civil rights claims but did not specify facts demonstrating that the claims were nonfrivolous.  Nor did they maintain that they had no other remedy to compensate them for their lost claims.  Even liberally construing their complaints as we must do for pro se litigants, they do not sufficiently allege that they have suffered actual injury.

Monroe, 536 F. 3d at 206 (citations and footnote omitted).

14.  Plaintiff's allegations suffer the same deficiencies as the complaints in Monroe.  Specifically, although Plaintiff was given leave to file two amended complaints asserting an access to courts claim, Plaintiff does not assert facts showing that, as result of defendants' actions, he lost the opportunity to pursue a specific non-frivolous legal claim before a specific court.  Nor does Plaintiff assert facts showing that he had no other remedy to compensate him for his lost claim(s).  This Court will dismiss the First Amendment access to courts claim.  See Gibson v. Superintendent of N.J. Dep't of Law & Public Safety-Div. of State Police, 411 F. 3d

427, 444-45 (3d Cir. 2005) (dismissing denial of access claim for failure to specify causes of action lost).

Deliberate Indifference to Health or Safety

15. Plaintiff summarizes his deliberate indifference claim as follows in the section of the Second Amended Complaint entitled Causes of Action: "Defendant's deliberate indifference to the substantial risk of serious harm and jeopardy to the prisoners health and safety posed by exposure to continued incarceration, and deliberate indifference to the plaintiffs' liberty interest as stipulated by the United States and New Jersey Constitutions . . ." [Docket Entry #49 at p. 3 ¶3] The following excerpts provide examples of allegations which are repeated throughout the Second Amended Complaint:

> 92. MCCF and defendant have displayed deliberate indifference to the substantial health, safety, and threat posed by exposing the plaintiff to other prisoners from other persons known to suffer from HIV, mononucleosis, Hepatitis A, Hepatitis B, Hepatitis C, blood borne disorders, tuberculosis, AIDS, without regard for separation, restrictions, isolation and or information concerning said prisoners or inmates as of right.
>
> \*             \*             \*
>
> 95. Defendant MCCF knew and or should have known of the KSF or KAF capacity of each of the alleged criminal complainants and failed or refused to remedy the ongoing deprivation as stipulated by the court and further endangering the life, liberty and safety of the plaintiff . . .
>
> 96. Defendant knowingly disregarded an excessive risk to the health and safety of the plaintiff.
>
> \*             \*             \*
>
> 101. Defendants knowingly disregarded an excessive risk to the direct violation of the United States Constitution by violating the plaintiff's right to substantive and procedural rights of the plaintiff which conduct constitutes deliberate

>indifference, and has deprived the plaintiff of liberty interest and property interest . . .
>
>\*            \*            \*
>
>118.  Defendants knowingly disregarded an excessive risk to the health and safety of the plaintiff during numerous court trips and failed to act reasonably to protect the plaintiff form substantial risk of serious bodily harm or injury, which conduct constitutes deliberate indifference . . .
>
>\*            \*            \*
>
>121.  Defendants knowingly disregarded an excessive risk to the health and safety of the plaintiff by failing to provide a safe and secure environment in which plaintiff may exercise his Constitutional right of access to the courts, which constitutes deliberate indifference to a well established and documented danger, in violation of the Eighth Amendment . . .

[Docket Entry #49 at pp. 21-29]

16.  The pleading standard under Rule 8 was refined by the Supreme Court in its recent decision <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009), where the Supreme Court clarified as follows:

>[In any civil action, t]he pleading standard . . . demands more than an unadorned ["]the-defendant-unlawfully-harmed-me["] accusation. [<u>Twombly</u>, 550 U.S.] at 555 . . . .  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [<u>Id.</u>] at 555. [Moreover,] the plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully.  <u>Id.</u> [Indeed, even w]here a complaint pleads facts that are "merely consistent with" a defendant's liability, [the so-alleging complaint still] "stops short of [showing] plausibility of 'entitlement to relief.'"  <u>Id.</u> at 557 (brackets omitted).  [<u>A fortiori</u>,] the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions [or to t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements [, <u>i.e.</u>, by] legal conclusion[s] couched as a factual allegation [e.g.,] the plaintiffs' assertion of an unlawful agreement [or] that [defendants] adopted a policy "'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." . . . . [W]e do not reject these bald allegations on the ground that they are

> unrealistic or nonsensical. . . . It is the conclusory nature of [these] allegations . . . that disentitles them to the presumption of truth. . . . [Finally,] the question [of sufficiency of] pleadings does not turn [on] the discovery process. Twombly, 550 U.S.] at 559 . . . . [The plaintiff] is not entitled to discovery [where the complaint asserts some wrongs] "generally," [i.e., as] a conclusory allegation [since] Rule 8 does not [allow] pleading the bare elements of [the] cause of action [and] affix[ing] the label "general allegation" [in hope of developing actual facts through discovery].

Iqbal, 129 S. Ct. at 1949-54.

      17. The Third Circuit observed that Iqbal hammered the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[1] which was applied to federal complaints before Twombly. See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009). Since Iqbal, the Third Circuit has required the district courts to conduct, with regard to Rule 8 allegations, a two-part analysis when reviewing a complaint for dismissal for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [See Iqbal, 129 S. Ct. at 1949-50]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief" [in light of the definition of "plausibility" provided in Iqbal.] In other words, a complaint must do *more than allege the plaintiff's entitlement to relief*. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the *mere possibility of misconduct, the complaint has alleged-but it has not 'show*[*n*]*'-'that the pleader is entitled to relief*.'" Iqbal, [129 S. Ct. at 1949-50

---

[1] The Conley court held that a district court was permitted to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. at 45-46.

9

> (emphasis supplied)]. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-11 (emphasis supplied).

18. Prison officials have a duty to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-7 (1984)). Moreover, the Due Process Clause of the Fourteenth Amendment prohibits punishment of a pretrial detainee prior to an adjudication of guilt in accordance with due process of law. See Bell v. Wolfish, 441 U.S. 520, 535 (1979); Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005). As the Supreme Court explained,

> if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal - if it is arbitrary or purposeless - a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

Bell, 441 U.S. at 539 (footnote and citation omitted).

19. The maintenance of security, internal order, and discipline are essential goals which at times require "limitation or retraction of . . . retained constitutional rights." Bell, 411 U.S. at 546. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." Id. at 540.

20. The Fourteenth Amendment standard of unconstitutional punishment, like the Eighth Amendment's cruel and unusual punishments standard, contains both an objective component and a subjective component:

> Unconstitutional punishment typically includes both objective and subjective components. As the Supreme Court explained in Wilson v. Seiter, 501 U.S. 294 . . . (1991), the objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" Id. at 298 . . . . The Supreme Court did not abandon this bipartite analysis in Bell, but rather allowed for an inference of mens rea where the restriction is arbitrary or purposeless, or where the restriction is excessive, even if it would accomplish a legitimate governmental objective.

Stevenson v. Carroll, 495 F. 3d 62, 68 (3d Cir. 2007).

21. In this Second Amended Complaint, Plaintiff repeatedly complains that defendants were deliberately indifferent to his health and safety, but since these allegations are conclusory, this Court is required to disregard them in determining whether Plaintiff has stated a claim for relief. Aside from Plaintiff's allegations that the fact of his pretrial incarceration caused him anxiety and was otherwise generally bad for his health, the only specific facts Plaintiff provides are that defendants were deliberately indifferent "to the substantial health, safety, and threat posed by exposing the plaintiff to other prisoners from other persons known to suffer from HIV, mononucleosis, Hepatitis A, Hepatitis B, Hepatitis C, blood borne disorders, tuberculosis, AIDS." [Docket Entry #49 at p. 21-22 ¶ 92] But these allegations are not sufficient to show that Plaintiff objectively faced a serious risk to his health. Plaintiff does not state that he shared a cell with any particular person who had a contagious disease or state any facts showing how defendants "exposed" Plaintiff to any contagious disease. Accordingly, the Second Amended

Complaint fails to assert facts showing that defendants were deliberately indifferent to a serious risk to his health, safety or medical needs.

22.  Because Plaintiff has been given two opportunities to assert facts stating an access to courts claim and/or a claim that defendants were deliberately indifferent to his health or safety, but he has failed to assert sufficient facts, the dismissal of the Second Amended Complaint will be with prejudice.

23.  This Court will enter an appropriate Order.


                    s/Susan D. Wigenton
                    **SUSAN D. WIGENTON, U.S.D.J.**

Dated: August 10, 2010